### 103.  REYNOLDS *v.* NEVIN *et al.*

Where it is apparent, from the uncontradicted evidence, that there is a total failure of consideration as to the contract sued on, it is not error to direct a verdict in favor of the defendant.

Appeal, from Floyd superior court—Judge Wright. May 8, 1906.

Argued February 11,—Decided February 20, 1907.

*R. T. Fouche, Paul H. Doyal,* for plaintiff.

*Denny & Harris,* for defendants.

RUSSELL, J. John H. Reynolds brought suit in a justice's court, on four notes for $75 each, against James B. Nevin, maker, and the executors of Mrs. H. A. Nevin, deceased, as endorsers. From the judgment of the justice's court an appeal was taken to the superior court, where the cases were consolidated; and the jury, by

the direction of the presiding judge, rendered a verdict for the defendant. Upon the overruling of his motion for a new trial, the plaintiff excepted, assigning error upon the ground that his motion should have been granted on each and all of the grounds stated therein. Was the evidence such that no other verdict could have been rendered by the jury? If so, then the direction of the verdict could not hurt the defendant, and a new trial should not be granted. If, on the other hand, in any view of the evidence as applied to the issues raised by the pleadings, a finding for the plaintiff would have been authorized, then to have directed the verdict would have been harmful error.

The sworn pleas of the defendants in error in all of the cases were the same, as follows: (1) That defendants, and neither of them, are indebted to plaintiff in manner and form as in the summons alleged; neither do they nor either of them owe plaintiff anything. (2) And for further plea in this behalf the defendants, and each of them, individually and as representatives of the estate of Mrs. Helen A. Nevin, deceased, say, that plaintiff, John H. Reynolds, has no title in said notes which would authorize him to sue these defendants; that the said notes were originally given to Mrs. Myra A. Craigmiles; that after their maturity, on the 8th day of November, 1904, they were owned by and in the possession of the said Mrs. M. A. Craigmiles; that said plaintiff on that day had suit brought thereon in the name of Mrs. Myra A. Craigmiles, alleging title in her; that defense being filed by these defendants, said suit was dismissed; that this plaintiff, as agent of Mrs. M. A. Craigmiles, instructed said suit to be dismissed, and that no change in title has occurred since that time. Wherefore plaintiff is estopped to assert title in said notes. (3) And for further plea in this behalf, defendants say that said plaintiff, John H. Reynolds, on and from May 1, 1899, to and including May 1, 1904, was and still is the agent of Mrs. M. A. Craigmiles; and that said J. H. Reynolds, during said transaction, from its inception to the present day, was not and is not the agent of these defendants, or either of them. (4) And for further plea in this behalf defendants and each of them show that the note sued on was one of a series of notes given by said James B. Nevin for interest, in semi-annual instalments of $300, on $7,500 borrowed from Mrs. Myra A. Craigmiles on May, 1, 1899; that said James B. Nevin agreed to pay interest at the rate

of 8 per cent. per annum on said loan and gave to said lender one note for $225 and one note for $75, due six months after that date, and similar notes for twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, and sixty months after date, that the note sued on is one of said $75 notes given as part payment of semi-annual interest on said $7,500. (5) Defendants further show that said lender, Mrs. Myra A. Craigmiles, though her agent, John H. Reynolds, requested that said transaction be given in the form of rent notes, and not as interest notes; that each and all of said notes were, therefore, to recite that they were given for rent, but that in truth and in fact said James B. Nevin gave to said lender a deed to property in the city of Rome, known as the Nevin Opera House, retaining possession of it and using it during the entire period of said loan, and said notes represented interest on said loan, and nothing else. (6) Defendants, and each of them, show further that said note is without consideration, for that afterwards, to wit, on the 3d day of July, 1901, before the 1st day of March, 1902, the said Mrs. M. A. Craigmiles, at the request and instance of the plaintiff, J. H. Reynolds, ended all connection with said transaction, requested defendant J. B. Nevin to borrow the money from other parties, which he, the said J. B. Nevin, did, by obtaining a like loan for $75 on said 3d day of July, 1901, from Mrs. S. J. Featherston; that said change was not made at the request of the defendant J. B. Nevin, or any of said defendants; that new notes were executed by said James B. Nevin and endorsed by Mrs. Helen A. Nevin to Mrs. S. J. Featherston, to cover interest from said July 3d, 1901, to July 3d, 1904; that said Mrs. M. A. Craigmiles and said John H. Reynolds insisted on this change, on the ground, expressed by said J. H. Reynolds at the time, that it was to the interest of said Mrs. M. A. Craigmiles, in that she, Mrs. M. A. Craigmiles, at that time was compelled to turn a large amount of assets into cash. (7) Defendants, and each of them, further show that all right to interest or rent in the said Mrs. M. A. Craigmiles, or said J. H. Reynolds, ended on the 3d day of July, 1901; that at the special instance of Mrs. M. A. Craigmiles and said J. H. Reynolds the debt due by said James B. Nevin and Mrs. Helen A. Nevin, as endorser, was that day satisfied in full; that the same was then and there voluntarily accepted by said J. H. Reynolds in full satisfaction of all said notes, including the note sued on; that

after said 3d day of July, 1901, neither said Mrs. M. A. Craig-miles nor said J. H. Reynolds was entitled to either interest or rent on said transaction, the consideration therefor having entirely failed by the said Mrs. M. A. Craigmiles voluntarily putting her-self in the position where she was no longer either creditor or land-lord of said James B. Nevin.    (8) That defendants, and each of them, further show that any and all right of a landlord to collect rent in said notes was voluntarily surrendered by said Mrs. Craig-miles and J. H. Reynolds, they agreeing to terminate said trans-action, and the same having been done at their special instance and request.    (9) That said James B. Nevin, executor, Mrs. Ida N. Patton, executrix, and Mrs. Mary N. Brumby, executrix, of the last will of Mrs. Helen A. Nevin, deceased, further show especially that their testatrix, Mrs. Helen A. Nevin, signed said notes to be used in payment of interest on said $7,500 loan only; that she knew and consented to said interest being denominated as rents in said notes, but that she never endorsed the notes for any other purpose, and that said J. H. Reynolds had special notice thereof. (10) The said defendant, James B. Nevin, says, in further plea, that he executed said notes in payment of interest on said $7,500 loan only; that he knew and consented to said interest being de-nominated as rent in said notes; but that the same were without other or further consideration, and that the said J. H. Reynolds had special knowledge thereof.    (11) For further plea in this be-half defendants, and each of them, show that, by reason of the facts hereinbefore stated, the said note has been fully settled, satisfied, and paid.    Of all which matters and things defendants put them-selves upon the country.

Plaintiff's motion for new trial was as follows:    (1) Because the verdict is against the evidence, and without evidence to support it.    (2) Because the verdict is contrary to law.    (3) Because, as movant contends, in directing said verdict, the court took from the jury the right to pass upon the evidence which had been introduced tending to show that the notes sued on were the property of the plaintiff, and were kept by him as his property in the transaction, with the knowledge of and by agreement with J. B. Nevin, and the further evidence that said Nevin, after the change of the loan, knew that plaintiff held and expected him to pay the notes, and the other evidence on that subject.    (4) Because the court allowed the

defendant to introduce a petition, with process attached, showing that on the 8th day of November, 1904, Myra A. Craigmiles commenced in Floyd city court a suit against the defendants on the notes now sued on by J. H. Reynolds, and on the 15th of March, 1905, dismissed the same; and overruled plaintiff's objections to said evidence on the ground that the same was irrelevant.

As we view this suit none of these assignments reach the vital, controlling question in the case. The defendant's answer, if sustained by evidence, sets up a good and valid defense to the collection of the notes, in that the consideration had totally failed; and the question arises, therefore, as to whether the evidence establishes this without contradiction or issue of fact. The judge may direct a verdict, but it is at his peril; for if there be one material fact at issue, the direction of the verdict is an error so harmful to the losing party as to demand a new trial. Of course, it need not be remarked that conflicts in the evidence as to matters immaterial are not to be considered. It does not appear to us from the record that there was a single conflict in the evidence as to the material matter of failure of consideration. And the defendants would be entitled to a verdict if the uncontradicted evidence established their plea of failure of consideration, even if it be true that they failed to sustain any or all other parts of their answer. So we will limit the right of the defendants to hold their verdict to their plea of failure of consideration, and consider that only. In the third ground of the motion for a new trial it is complained that "the court took from the jury the right to pass upon the evidence which had been introduced tending to show that the notes sued on were the property of the plaintiff, and were kept by him as his property . . , with the knowledge of and by agreement with J. B. Nevin," and that "Nevin, after the change of the loan, knew that plaintiff held and expected him to pay the notes." As this verdict was directed, in considering it we must take Reynolds' testimony as the truth, and disregard any testimony which conflicts with it. And it is true that there was direct conflict between these witnesses (plaintiff and defendant) as to this point. But it was absolutely valueless which was right or should have been believed as to that (in determining whether the consideration of the notes had failed), in view of the perfect concurrence of the witnesses as to everything connected with the notes, up to and

including the payment and transfer of the Craigmiles loan, and in view of the well-known legal principles that consideration can always be inquired into, and that the consideration provided at the time of its execution is the only consideration that will support a note. The plaintiff's possession of the promissory notes raised no presumption of consideration in favor of one who knew and admitted he knew all the facts of the transfer; knew that the notes were for unearned interest, due in future on a loan which had been paid by replacing it with a loan in which the borrower received no more money than he had originally borrowed, and no extension of the time in which he had to repay it, but, on the contrary, was put to the trouble of raising at once a lien on his property, from which it was protected during the continuance of Mrs. Craigmiles' loan.

There was conflict as to the agreement by which plaintiff was to keep, and the defendant be bound for, these notes. But reject altogether the testimony of Nevin (who denied that he made such an agreement) and take the testimony of Reynolds as the truth in toto, it is still uncontradicted that Reynolds was the agent of Mrs. Craigmiles, and later, as holder or purchaser, stood in her shoes, with notes for a sum of money which he knew, when he acquired them, represented unearned interest on a loan which had been repaid. And though Nevin promised to be bound for the notes, that agreement is nudum pactum as to him, and certainly, in so far as Nevin's verbal promise may affect the endorsers, the notes are likewise without consideration as to them. As against even a sealed note a failure of consideration may be pleaded. Every contract must have for its consideration either some present benefit flowing to the maker or injury resulting to the opposite party, or else a promise of something to be done in the future. This promise, which may be a good consideration, can be either express, or implied from the circumstances of the case. Whenever the consideration moving to the maker of a contract is a promise, on behalf of the opposite party to the contract, of something to be fulfilled in the future, such opposite party to the contract must furnish the consideration *contemplated,* else a plea of failure of consideration, total or partial, as the case may be, will be available to the maker of the contract in defense thereof. In the present instance the consideration of the notes sued on is a promise on the

part of Mrs. Craigmiles that Nevin should have the use of the money during a definitely named period in the future. Unless she furnished that money as contemplated, the consideration failed. We do not mean to say that the nature of the promise from Mrs. Craigmiles to Nevin could not have been changed by a new and mutual agreement; and if the promise as so changed still amounted to a benefit to Nevin or an injury to Mrs. Craigmiles, it would have been sufficient to supply a lawful consideration; for example, if, by mutual consent, Mrs. Craigmiles had let Nevin have a larger sum for a shorter period, or a smaller sum for a longer period, this would be sufficient fulfillment of the promise implied against her, under the original contract, as a consideration for the notes given by Nevin. Therefore the question to be determined (since it indisputably appears from the evidence that Mrs. Craigmiles did not furnish the consideration originally contemplated) is, was there, under a mutual agreement between her and Nevin, any substitute of a new promise, expressed or implied, on her part, for the original promise supporting the contract?

If it had been contended that the consideration of these notes was supplied by Mrs. Craigmiles agreeing to obtain the money from Mrs. Featherston, then, under the rule just stated, this would have supplied the consideration. In other words, if Nevin had agreed to accept from Mrs. Craigmiles, in performance of her implied promise to furnish the money herself, an agreement on her part to get the money for him from Mrs. Featherston, Nevin could not plead a failure of consideration; but such was not the contention of the plaintiff. Reynolds does not even contend that Nevin accepted a substitute of his (Reynolds') undertaking to get the money from Mrs. Featherston in lieu of the consideration which was to be supplied by Mrs. Craigmiles, or, to state it more simply, he does not contend that Nevin agreed to pay these notes in consideration of Reynolds' services in obtaining the money from Mrs. Featherston. Throughout all his evidence Reynolds says nothing to negative the position assumed by Nevin, that the consideration of these notes was Mrs. Craigmiles' undertaking to let him have this money during a certain named period; nor does he suggest any agreed alteration of the specific consideration contemplated. It is undisputed that the particular consideration contemplated has failed; and irrespective of the question as to what might be the con-

sideration of the contract between Reynolds and Mrs. Craigmiles by which Reynolds claims to have obtained possession of and title to these notes, the consideration moving to Nevin has failed, and has not been otherwise supplied. Reynolds does not claim that Nevin gave these notes in consideration of his (Reynolds') services in obtaining the loan; he simply contends that these services supplied the consideration of the contract of transfer by which he alleges the title to the notes passed from Mrs. Craigmiles to him.

*Judgment affirmed*